**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BENNIE L. ROBINSON,

     Petitioner,

v.

TOM WINN,[1]

     Respondent.

_____/

Civil No. 2:17-CV-13892
HONORABLE ARTHUR J. TARNOW
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Bennie L. Robinson, ("petitioner"), confined at the Saginaw Correctional

Facility in Freeland, Michigan, has filed a *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for

two counts of second-degree murder, M.C.L.A. § 750.317, felon in possession of

a firearm, M.C.L.A. § 750.224f, and possession of a firearm during the

commission of a felony (felony-firearm), M.C.L.A. § 750.227b.  The trial court

sentenced petitioner as a fourth habitual offender, M.C.L.A. § 769.12, to 60 to

100 years' imprisonment for each murder conviction, 40 months to 5 years'

imprisonment for the felon in possession of a firearm conviction, and two years'

imprisonment for the felony-firearm conviction.  For the reasons stated below, the

_____

[1] The Court amends the caption to reflect the current warden of petitioner's incarceration.

1

application for a writ of habeas corpus is DENIED WITH PREJUDICE.

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from the December 19, 2011 shooting deaths of Earl Thomas, Jr. (Thomas) and Marcus Fly at a drug house in Detroit. At least two other men were present in the home at the time Thomas and Fly were shot. One person, David Sumlin, testified at trial that defendant entered the home in which he, Thomas, Fly, and Frank Coleman were engaged in selling drugs. Sumlin testified that after remaining in the home for approximately half hour, defendant pulled a handgun and ordered Sumlin and Coleman into separate rooms. Sumlin then heard gunshots and, after eventually leaving the room he was in, found Thomas dead and Fly missing. Fly's body was later discovered in the basement. Sumlin was not able to identify defendant or anyone else in a photographic array conducted shortly after the crime, but he later identified defendant at the preliminary examination and at trial. Coleman, who had absconded from parole, did not testify at the preliminary examination and could not be located for trial. Another witness, Larry Davis, testified that shortly after the shooting, Coleman called him on the phone and told him that defendant had shot his brother, Thomas.

> The prosecutor's theory at trial was that another person, Edward Robinson, had sent defendant to the house to harm Thomas's brother, Davis, because of a falling out between Robinson and Davis related to their ongoing sale of drugs. The defense theory at trial was misidentification.

*People v. Robinson*, No. 323467, 2016 WL 232328, at *1 (Mich. Ct. App. Jan. 19, 2016).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 500 Mich. 855, 884

N.W.2d 271 (2016).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court abused its discretion in over ruling defendant's objections to Mr. Coleman['s] proposed excited utterance and violated Mr. Robinson's right to confront an adverse witness.

II. The trial court abused its discretion in overruling defendant's objection to Rob"s (sic) alleged statements to Davis that he was sending Robinson over an[d] violated Mr. Robinson's Constitutional right to Confrontation.

III. The evidence was insufficient to support the conviction in violation of Mr. Robinson's state and federal constitutional rights to be free of conviction in the absence of proof beyond [a] reasonable [doubt].

IV. The trial court abused its discretion in ruling the prosecution had shown due diligence admitting [to] produce Frank Coleman and by denying Robinson a missing witness instruction, thus denying Mr. Robinson his state and federal constitutional right to confrontation.

V. The governmental failure to investigate, disclose and analyze physical evidence deprived defendant/petitioner of due process and a fair trial.

VI. Petitioner was denied his Sixth Amendment right to effective assistance of counsel where his trial attorney failed adequately [to] impeach the credibility of the two main prosecution witnesses when he had sworn depositions, out-court-statements, police reports on hand, by failing to impeach Larry Davis and David Sumlin and to argue to [the] jury about a manifest discrepancy between their testimony.

VII. The defendant was denied his Sixth Amendment right to effective assistance of counsel due to trial attorney's failure to suppress, and object to the identification evidence.

VIII. The prosecutor violated the defendant's right to due process guaranteed under the Fourteenth Amendment by obtaining a conviction

through the knowing use of perjured testimony, alternatively, defense trial [counsel] was constitutionally ineffective [by] failing to object to the testimony of Larry Davis.

IX. Mr. Robinson was denied a fair trial where the prosecutor both improperly vouched for the credibility of witnesses and improperly vouched for defendant's guilt during his closing arguments.

X. Mr. Robinson's" (sic) constitutional right[s] to a fair trial were violated by the cumulative effects of the multiple errors committed at trial and his conviction must be reversed.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

4

*Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

This Court notes that the Michigan Court of Appeals reviewed and rejected several of petitioner's claims under a plain error standard because he failed to preserve the issues as constitutional claims at the trial court level. The AEDPA deference applies to any underlying plain-error analysis of a

procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017); *cert. den.* 138 S. Ct. 1998 (2018).[2]

## III. Discussion

### A. Claims ## 1 and 2. The excited utterance and confrontation claims.

Petitioner contends that the trial court abused its discretion when it allowed the introduction of Coleman's out-of-court statement to Davis, that Davis' brother had been shot by petitioner. Coleman did not testify at petitioner's trial.

The Michigan Court of Appeals found the statement admissible as an excited utterance, as follows:

> Davis testified that he received a telephone call from Coleman shortly after the shooting in which Coleman told Davis that defendant had shot his brother. Coleman's statement related to a fatal shooting, a startling event. The evidence indicated that the call was made approximately 10 minutes after the police received a 911 call about the shooting, and according to Davis, Coleman was "screaming in the phone" during his statement. This evidence supports that Coleman was still "under the influence of an overwhelming emotional condition" when he made the statement. Although defendant argues that there was no evidence

---

[2] Respondent urges this Court to deny these claim on the grounds that they are procedurally defaulted because petitioner failed to object at trial. Procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. The Court believes it would be easier to address the merits of the claims.

that Coleman's statement was based on personal knowledge, Sumlin's testimony that Coleman was at the home at the time of the shooting was sufficient to show that Coleman's statement was based on personal knowledge. Thus, the trial court did not abuse its discretion in admitting the testimony.

*People v. Robinson*, 2016 WL 232328, at *2 (internal citations omitted).

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000). What is or is not hearsay evidence in a state court trial is governed by state law. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 705 (E.D. Mich. 2004)(internal citations omitted). Mr. Robinson's claim that the trial court improperly admitted Coleman's statement to Davis under the excited utterance exception to the hearsay rule presents a state evidentiary law issue which is not cognizable on federal habeas review. *See e.g. Smith v. Jones,* 326 F. App'x 324, 330 (6th Cir. 2009); *see also Weber v. Newland,* 16 F. App'x 692, 693 (9th Cir. 2001); *Williams v. White,* 183 F. Supp. 2d 969, 975-77 (E.D. Mich. 2002).

Robinson also claims that the statement made by Coleman to Davis was inadmissible because Coleman did not testify at his trial, thereby violating his

right to confrontation.  He further contends that his right to confrontation was violated when Davis testified that Rob was going to send petitioner to inflict serious harm on him (Davis).  (Habeas Petition p. 10).  Although Davis's brother was killed in the encounter, Davis was the target.  Rob did not testify at petitioner's trial.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36 (2004).  However, the Confrontation Clause is not implicated, and thus does not need not be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, 547 U. S. 813, 823-26 (2006); *see also Desai v. Booker,* 538 F.3d 424, 425-26 (6th Cir. 2008).  Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Crawford,* 541 U.S. at 51-52, 56.  In holding that the Sixth Amendment right to confrontation does not apply to non-testimonial statements, the Supreme Court stated:

> "The text of the Confrontation Clause reflects this focus [on testimonial hearsay].  It applies to 'witnesses' against the accused-in other words, those who 'bear testimony.' 1 N. Webster, An American Dictionary of the English Language (1828).  'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing

or proving some fact.' *Ibid.* An accuser who makes a formal statement
to government officers bears testimony in a sense that a person who
makes a casual remark to an acquaintance does not."

*Davis,* 547 U.S. at 823-24 (quoting *Crawford,* 541 U.S., at 51).

The statements made by Rob and Coleman to Davis did not qualify as

testimonial statements covered by the Confrontation Clause because they were

casual remarks made to a friend or acquaintance and not made to law

enforcement. *See Deshai,* 538 F.3d at 427; *see also Jackson v. Renico,* 179 F.

App'x 249, 255 (6th Cir. 2006). Morever, because the Confrontation Clause has

no applicability to non-testimonial statements, they may be admitted even if they

lack indicia of reliability. *See Whorton v. Bockting,* 549 U.S. 406, 420 (2007).

Petitioner is not entitled to habeas relief on either his first or second claims.

**B. Claim # 3. The sufficiency of the evidence claim.**

Petitioner alleges that the evidence was not sufficient to sustain his

conviction because Sumlin could neither identify petitioner from a six man photo

array nor name petitioner as the individual who placed him in a bedroom prior to

the shootings of Thomas and Fly. Petitioner also contends that Sumlin's in-court

identification at the preliminary examination did not have a sufficiently

independent basis to be admitted into evidence. (Habeas Petition, p. 13). Thus,

petitioner argues that the prosecution presented insufficient evidence to establish his

identity as the perpetrator.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)(internal quotation omitted); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008)("A conviction may be sustained based on nothing more than circumstantial evidence."). Moreover, "[c]ircumstantial evidence is not only sufficient, but may

also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)(quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954)(circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more"); *Harrington,* 562 U.S. at 113 ("sufficient conventional circumstantial evidence" supported the verdict).

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

The Michigan Court of Appeals rejected petitioner's sufficiency of evidence claim as follows:

> Here, Sumlin testified that defendant arrived at the home, had a handgun, and ushered him and Coleman into separate rooms, following which Sumlin heard gunshots and later discovered Fly dead on the floor. While Sumlin did not observe defendant actually shoot Fly or Thomas, his testimony describing defendant's conduct immediately before the shooting was sufficient to allow the jury to find beyond a reasonable doubt that defendant was at least one of the persons involved in the shooting. Moreover, Sumlin's testimony was further supported by Davis's testimony that Coleman called him shortly after the shooting to state that defendant had killed Thomas. Davis also provided evidence concerning a possible motive for the killing. This circumstantial evidence was sufficient to support a finding that defendant was involved in the shooting. While defendant states that Sumlin's identification testimony was suspect, the credibility of his testimony was for the jury to decide. There was sufficient evidence of defendant's identification to support his convictions.

*People v. Robinson*, 2016 WL 232328, at *3 (internal citations omitted).

Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a

reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003)(citing *People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)). Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). Therefore, eyewitness identification is not necessary to sustain a conviction. *See United States v. Brown*, 408 F.3d 1049, 1051 (8th Cir. 2005); *Dell v. Straub*, 194 F. Supp. 2d at 648. This Court further notes that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir. 1985)(internal citations omitted). Sumlin unequivocally identified petitioner at trial as being involved in the shooting based on his personal observations. This evidence was sufficient to support petitioner's convictions. *See Thomas v. Perry*, 553 F. App'x 485, 487–88 (6th Cir. 2014).

There was also evidence that telephone records for a cell phone associated with Edward Robinson and Tesha Kimbrough, the mother of petitioner's child, showed that the phone was located near the home where the shooting occurred around the time the 911 call was made concerning the shooting. *People v. Robinson*, 2016 WL 232328, at *8. This cell phone activity near the crime scene at the time of the crime was also circumstantial evidence that was sufficient to establish petitioner's identity, being that Robinson wanted petitioner to harm Davis and sent petitioner to the home. *See United States v. Starnes*, 552 F. App'x 520, 525 (6th Cir. 2014). Sergeant McGinnis testified that

13

the phone records placed petitioner at the crime scene within a few minutes of the murders. (T. 7/22/2014, pp. 31-32).

As noted by the Sixth Circuit, "the mode of analysis for assessing the sufficiency of the evidence under *Jackson v. Virginia*, s*upra*, is not significantly altered because this case [] rests totally upon circumstantial evidence.[3] *Scott v. Perini*, 662 F.2d 428, 433 (6th Cir. 1981). Moreover, a federal court reviewing a state court conviction on habeas review that is "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos*, 565 U.S. at 7 (quoting *Jackson v. Virginia*, 443 U.S. at 326).

Because there were multiple pieces of evidence to establish petitioner's identity as one of the perpetrators of the crimes in this case, the Michigan Court of Appeals did not unreasonably apply *Jackson v. Virginia* in rejecting

_____

[3] Much has been written concerning the relative weight of circumstantial and direct evidence. Generalized opinion ranges from that which tends to place lesser credence in circumstantial evidence to that which assigns it greater reliability on the premise that the witness giving direct testimony may lie, but circumstances do not. *See* I Wigmore on Evidence s 26 (3rd ed. 1940). In a civil case, *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 10, 5 L. Ed.2d 20 (1960), the Supreme Court stated: "But direct evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." The modern view is that the law generally makes no distinction between direct or circumstantial evidence nor requires particular instruction to the jury, allowing jurors to give evidence the weight which they believe it is entitled. *Scott v. Perini*, 662 F.2d at 433. (footnote original).

petitioner's sufficiency of evidence claim. *See Moreland v. Bradshaw,* 699

F.3d 908, 919-21 (6th Cir. 2012). Petitioner is not entitled to relief on his third

claim.

### C. Claim # 4. The *res gestae* witness or failure to give an adverse inference instruction claim.

Petitioner next contends that the trial court abused its discretion in finding

that the prosecution exercised due diligence in its efforts to produce Frank

Coleman, whose excited utterance was admitted at trial. In the alternative,

petitioner contends that the trial court judge erred in failing to give a requested

adverse inference instruction to the jury.

Violations of state law and procedure which do not infringe specific federal

constitutional protections are not cognizable claims under Section 2254. *Estelle v.

McGuire*, 502 U.S. at 67-68; *see also Jones v. Smith,* 244 F. Supp. 2d 801, 814

(E.D. Mich. 2003).

Federal law does not require the production of *res gestae* witnesses.

*Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Michigan's

law requirement that the prosecutors produce *res gestae* witnesses is simply a

matter of state law whose enforcement is beyond the scope of federal habeas

review. *See Collier v. Lafler,* 419 F. App'x 555, 559 (6th Cir. 2011). "[U]nder

federal law, there is no obligation on the part of the prosecutor to call any

particular witness unless the government has reason to believe that the testimony

would exculpate the petitioner." *Atkins v. Foltz*, 856 F.2d 192 (Table), 1988 WL 87710, *2 ( 6th Cir. August 24, 1988)(citing to *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972)).  Thus, whether a prosecutor exercised due diligence in attempting to locate a *res gestae* witness is outside the scope of federal habeas review. *Collier,* 419 F. App'x at 559.

Petitioner has offered no evidence that Coleman could have provided exculpatory evidence.  Moreover, in light of the evidence produced at trial, Coleman would have implicated petitioner in the shooting, since he was the other individual that petitioner placed in a bedroom at the time of the shooting.

The Court will also reject petitioner's related instructional error claim.  A habeas petitioner is entitled to relief only if the defective jury instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  A federal court may not grant habeas relief on the ground that a jury instruction was incorrect under state law, *Estelle*, 502 U.S. at 71-72, and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

A criminal defendant does not have a clearly established federal right to a missing witness instruction.  Petitioner therefore cannot obtain federal habeas relief based on the state court's failure to give an instruction to his jury regarding the prosecution's failure to produce witnesses. *See Stadler v. Curtin,* 682 F.

Supp. 2d 807, 821-22 (E.D. Mich. 2010). Petitioner is not entitled to habeas relief on his fourth claim.

### D. Claim # 5. The inadequate police/prosecutor investigation claim.

Petitioner next claims that the police and the prosecutor failed to adequately investigate the case against him, by failing to take fingerprints, remove DNA from the clothing he wore at the time he was apprehended, or go "back to the scene to collect evidence from the bathroom where Coleman stated one of the shooters supposedly went." (Habeas Petition, p. 17).

The Michigan Court of Appeals rejected this claim as follows:

Defendant relies on the prosecution's duty to disclose known evidence favorable to an accused to argue that the prosecutor, or the police, also had an obligation to discover and collect all evidence related to a crime. Defendant correctly states that a criminal defendant has a due process right to obtain exculpatory evidence possessed by the prosecution if it would raise a reasonable doubt about the defendant's guilt. *Brady v. Maryland*, 373 U.S. 83, 27; 83 S.Ct. 1194; 10 L.Ed.2d 215 (1963). To establish a *Brady* violation, a defendant must prove that: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v. Chenault*, 495 Mich. 142, 150; 845 NW2d 731 (2014). In this case, however, defendant does not argue that the prosecution suppressed material evidence in its possession, but rather argues that it failed to search for and discover potentially useful evidence in the first place. It is well-established that neither the police nor the prosecutor has a duty to search for and discover evidence beneficial to the defense. *People v. Burwick*, 450 Mich. 281, 289 n. 10; 537 NW2d 813 (1995); *People v. Sawyer*, 222 Mich.App 1, 6; 564 NW2d 62 (1997). Defendant's reliance on *People v. Jordan*, 23 Mich.App 375, 386; 178 NW2d 659 (1970), is misplaced because that case involved a failure to test material evidence already procured, not the failure to discover the evidence initially. Accordingly, defendant has not demonstrated any error, plain or otherwise.

*People v. Robinson*, 2016 WL 232328, at *4.

Petitioner is not entitled to habeas relief because there is no Supreme Court caselaw which requires the police or prosecutor to search for or develop exculpatory evidence for a criminal defendant.

On habeas review, a court may grant relief for an inadequate police investigation "only when the petitioner can show a deprivation of due process tantamount to a suppression of relevant evidence." *Owens v. Foltz*, 797 F.2d 294, 296 (6th Cir.1986). Where an alleged inadequate investigation is at issue, the jury or factfinder may consider the quality and thoroughness of the investigation in making a reasonable doubt determination. *Id.* The Due Process Clause requires that the prosecutor disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984). Furthermore, the failure by law enforcement to preserve potentially useful evidence violates due process of law if a criminal defendant can show that the police acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 56–58 (1988). However, neither *Trombetta* nor *Youngblood* impose a duty upon the police to collect evidence. *See Miller v. Vasquez*, 868 F.2d 1116, 1120 (9th Cir. 1988)("Since, in the absence of bad faith, the police's failure to *preserve* evidence that is only potentially exculpatory does not violate due process, then a fortiori neither does the good faith failure to *collect* such evidence violate due process."); *see also Thomas v. Warren,* 398 F. Supp.

18

2d 850, 859 (E.D. Mich. 2005)(habeas petitioner was not denied due process by police or prosecution's failure to timely investigate his alibi, where police and prosecution were under no constitutional obligation to investigate alleged alibi witnesses).  In fact, once a police officer has probable cause to make an arrest, he has no duty to investigate further. *See United States v. Harness,* 453 F.3d 752, 755 (6th Cir. 2006); *Klein v. Long,* 275 F.3d 544, 551 (6th Cir. 2001).

Because there is no clearly established Supreme Court precedent which holds that criminal defendants have a constitutional right to an adequate police investigation, the Michigan Court of Appeals' rejection of petitioner's claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 (2006).  Petitioner is not entitled to habeas relief on his fifth claim.

**E.  Claims ## 6 & 7. The ineffective assistance of trial counsel claims.**

Petitioner alleges that trial counsel was ineffective when he failed to adequately impeach the trial testimony of Larry Davis and David Sumlin. Petitioner also claims that trial counsel was ineffective due to his failure to suppress and object to the identification evidence.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as

the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland'*s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Petitioner first alleges that trial counsel inadequately impeached Mr. Sumlin and Mr. Davis.

The Michigan Court of Appeals denied petitioner's claim as follows:

Decisions regarding how to question witnesses are presumed to be matters of trial strategy. *People v. Petri*, 279 Mich.App 407, 413; 760 NW2d 882 (2008). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id.* at 411 (citation omitted). Although defendant complains that defense counsel failed to impeach witnesses Sumlin and Davis regarding certain inconsistencies in their testimony, the record discloses that counsel thoroughly cross-examined both witnesses and attempted to highlight various inconsistencies in their testimony or matters that affected their credibility. Counsel cross-examined Sumlin about his earlier failure to identify defendant, his level of intoxication during the shooting, the fact that he did not call the police after the offense even though he had a phone, the fact that he never reported what he allegedly observed and disappeared for more than two years, and the fact that he could not recall the time or day in which the shooting occurred or how many gunshots he heard. Counsel elicited Sumlin's admissions that the home had a number of visitors and that he had never seen defendant before. Although defendant challenges the lack of cross-examination concerning the lighting in the home, the record discloses that counsel questioned Sumlin's initial statement that the lighting was decent, getting Sumlin to admit that it was "enough light to see," but that the bedroom light was not turned on and that the bathroom and bedroom areas were both dark. Counsel cross-examined Davis in an attempt to discredit his own testimony, Sumlin's testimony, and Coleman's credibility. Counsel elicited Davis's admission that Robinson, who was supposed to be very angry, never personally tried to harm Davis, and that no other attempt had been made on Davis's life. In response to counsel's questioning, Davis admitted that he and defendant had not had any other negative interactions with each other. To impeach Sumlin's testimony identifying defendant as the shooter, counsel elicited that Davis knew that defendant walked with a "pretty bad" limp. During questioning, Davis stated that defendant was not Robinson's new partner, and was not one of the other men who had worked for Robinson when he and Davis were partners. Counsel also elicited from Davis that Coleman was a cocaine user. In addition, counsel explored Davis's motive to lie because the prosecutor's office told him that they would not tell his parole officer that Davis was running a drug house.

The mere fact that counsel did not cross-examine the witnesses on all contradictory aspects of their testimony and prior statements does not

> constitute ineffective assistance of counsel. *See People v. McFadden*, 159 Mich.App 796, 800; 407 NW2d 78 (1987). Most of the alleged inconsistencies identified by defendant involve minor or insignificant details. Indeed, counsel reasonably may have believed that he would have only confused the jury if he had attempted to highlight every one of the differences in testimony suggested by defendant. In contrast, counsel's more targeted attempts to cast doubt on the witnesses' memory or ability to observe were objectively reasonable and strategic. Defendant has not overcome the presumption of sound trial strategy.

*People v. Robinson*, 2016 WL 232328, at *5–6.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d at 651. "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

In the present case, defense counsel's performance did not constitute ineffective assistance of counsel where the record shows that defense counsel carefully cross-examined the prosecution witnesses and in his closing argument emphasized the inconsistencies and weaknesses in the testimony of the various witnesses, as well as their possible motivations for fabricating these charges against petitioner. *See Krist v. Foltz,* 804 F.2d 944, 948-49 (6th Cir. 1986); *Millender v. Adams,* 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002).

Although other attorneys might have reached a different conclusion about the value of cross-examining the witnesses in greater detail, counsel's strategic choice not to more extensively cross-examine Sumlin and Davis was "'within the

wide range of reasonable professional assistance.'" *See Moss v. Hofbauer,* 286
F.3d 851, 864 (6th Cir. 2002)(quoting *Strickland*, 466 U.S. at 689).  Indeed,
counsel's strategic choice to forego more in-depth cross-examination is "virtually
unchallengeable" because he made it after considering the relevant law and facts
of the case. *Id.*  Finally, petitioner has failed to identify how additional
impeachment of these witnesses would have affected the jury's decision.
Defense counsel did not perform ineffectively by not more forcefully cross-
examining Sumlin and Davis, particularly when the effect of further probing was
entirely speculative on petitioner's part. *See Jackson v. Bradshaw,* 681 F.3d 753,
764-65 (6th Cir. 2012).

     In his seventh claim, petitioner alleges that trial counsel was ineffective by
failing to suppress and object to the identification evidence.  Petitioner challenges
Sumlin's in-court-identification on the basis that Sumlin failed to identify petitioner
in a six man photo array and because there was not an independent basis for
Sumlin's in-court-identification. (Habeas Petition, p. 25).

     An eyewitnesses' failure to identify a suspect during a lineup goes to the
weight or credibility of the in-court identifications, not the admissibility. *Millender
v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004)(citing *United States v. Causey*, 834
F.2d 1277, 1286 (6th Cir. 1987); *People v. Barclay*, 208 Mich. App. 670, 528
N.W.2d 842 (1995)).  Because there was no showing that the photo array was
impermissibly suggestive, petitioner's counsel was not ineffective in failing to

object to the in-court identification of petitioner by Sumlin, even though he failed to identify petitioner at the photo array. *Id.* Furthermore, even if counsel had not objected to the in-court identification of petitioner, the decision to attack the credibility of Sumlin's identification of petitioner through cross-examination was a reasonable trial strategy that defeats petitioner's ineffective assistance of trial counsel claim. *See Scott v. Elo,* 100 F. App'x 332, 333-34 (6th Cir. 2004).

Petitioner is not entitled to habeas relief on his sixth and seventh claims.

### F. Claims ## 8 & 9. The prosecutorial misconduct claims.

In his eighth and ninth claims, petitioner contends that he was deprived of a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d at 528 (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state

court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012)(quoting *Harrington*, 562 U.S. at 103).

Petitioner first contends that the prosecutor committed misconduct by eliciting perjured testimony from Larry Davis. Petitioner also argues that trial counsel was ineffective for failing to object to the perjured testimony.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F.3d at 343.  Additionally, the fact that a witness contradicts himself or changes his story also does not establish perjury either. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003)(citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)).

Petitioner alleges that Larry Davis committed perjury when he testified that Rob was Edward Robinson, petitioner's cousin, rather than Robert Nelson. (Habeas Petition, pp. 31-31)(T. 7/21/2014, pp. 18-19).

This Court notes that there were duplicate names used for various individuals throughout the proceedings. (*Id.* at 99, 102, 104).  There were two individuals identified by the name of "Fly" and two individuals identified by the name of "Rob."  Davis testified that a man named Rob was his business partner, until he ended the business relationship.  When asked Rob's last name, Davis responded that he did not know the last name. (*Id.* at 31).  Davis was later approached outside of the house and asked if he would reconsider continuing his business relationship with Rob.  When Davis refused, Rob told him that he was going to send petitioner to get him. (*Id.* at 16-17).  Following that discussion, Davis left in his girlfriend's car.  Davis left his car at the house.  Shortly thereafter, two men entered the house, one identified as petitioner by Sumlin.

Petitioner takes issue with the testimony given by Davis as to whether Rob is Edward Robinson or Robert Nelson.  However, Davis indicated that he was

unaware of Rob's last name. (Habeas Petition, p. 32)(T. 7/21/2014 p. 19). Davis testified that Rob was initially his business partner, until he broke up the partnership. (*Id.* at p. 10). Regardless of Rob's last name, the record clearly reflects that after the falling out between the two men, a man that Davis knows as Rob sent an individual to the house to harm Davis.

Petitioner is not entitled to habeas relief on his claim because he has presented no evidence that Davis testified falsely concerning his knowledge of Rob's last name, nor has he shown any evidence that the prosecutor would have known that Davis could have been testifying falsely. Furthermore, because petitioner has failed to establish that Davis committed perjury, trial counsel was not ineffective by failing to object to Davis' testimony. *Brown v. Burt*, 65 F. App'x 939, 942 (6th Cir. 2003). Petitioner is not entitled to relief on his eighth claim.

In his ninth claim, petitioner alleges that the prosecutor vouched for the credibility of the prosecution witnesses. Petitioner claims that the prosecutor argued that Sumlin's testimony should be believed, when there was no evidence presented at trial to support Sumlin's testimony. The Michigan Court of Appeals reasonably found that the prosecutor was permitted to argue from the evidence why Sumlin's testimony should be believed. Because the prosecutor did not suggest that he had some special knowledge that Sumlin's testimony was truthful, the Court rejected petitioner's claim that the prosecutor vouched for Sumlin's credibility. *People v. Robinson*, 2016 WL 232328, at *8.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.1999)(internal citations omitted). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999)(internal citations omitted); *see also Griffin v. Berghuis,* 298 F. Supp. 2d 663, 674-75 (E.D. Mich. 2004). It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d 486, 537 and n. 43 (6th Cir. 2000). Indeed, "[T]he Supreme Court has never specifically held that a prosecutor's vouching for the credibility of a witness resulted in a denial of due process." *Wilson v. Bell*, 368 F. App'x 627, 632, n.3 (6th Cir. 2010). Even on direct appeal from a federal

28

conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

In the present case, the prosecutor did not argue that he had any special knowledge about Mr. Sumlin that had not been presented to the jury. There was no improper vouching because the prosecutor did not improperly "assert or imply that he drew from anything but [Sumlin's] trial testimony to argue that [he] was credible." *Cockream v. Jones*, 382 F. App'x 479, 485 (6th Cir. 2010).

Petitioner next contends that the prosecutor misrepresented the facts in the prior statements given by Davis, Sumlin, and Coleman. Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974)). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F.3d at 535. However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.* Here, the prosecutor argued inferences that could be drawn form the testimony produced at trial. Because there was at least some factual support in the record for the

29

prosecutor's argument, the prosecutor's remarks did not deprive petitioner of a

fair trial. *See U.S. v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008).

Petitioner alleges that the prosecutor committed misconduct by repeatedly

giving his opinion of the routes that the person was traveling, based on the phone

records, when there was no attempt to recover the phone or ascertain who

utilized the phone.  The Michigan Court of Appeals rejected the claim as follows:

> Defendant argues that this evidence was inadmissible because the
> officer who testified about the records acknowledged that he could not
> tell who possessed the phone at the time. "A prosecutor's good-faith
> effort to admit evidence does not constitute misconduct." *People v.
> Dobek*, 274 Mich.App 58, 70; 732 NW2d 546 (2007). The evidence was
> at least marginally relevant, given the allegations that Robinson wanted
> defendant to harm Davis and sent defendant to the home. Moreover,
> considering that defense counsel established that it could not be
> determined that the phone was actually used at the home, or who used
> it, defendant has not established an outcome-determinative plain error.
> *People v. Carines*, 460 Mich. 750, 763; 597 NW2d 130 (1999).

*People v. Robinson*, No. 323467, 2016 WL 232328, at *8 (Mich. Ct. App. Jan. 19,

2016).  Petitioner was not deprived of a fair trial because of prosecutorial

misconduct.

### G.  Claims # 10. The cumulative errors claim.

Petitioner lastly alleges that he is entitled to habeas relief because of

cumulative error.  The Sixth Circuit has noted that the United States Supreme

Court "has not held that distinct constitutional claims can be cumulated to grant

habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002).  Therefore,

petitioner is not entitled to habeas relief on his cumulative errors claim. *Id.*

30

### E. A certificate of appealability.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[4] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court concludes that jurists of reason could find its assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484-85. Any

---

[4] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

doubt regarding whether to grant a COA from the denial of a petition for federal habeas relief is resolved in favor of the habeas petitioner, and the severity of the penalty may be considered in making that determination. *See Newton v. Dretke,* 371 F.3d 250, 253 (5th Cir. 2004). Any doubts regarding the issuance of a COA in this case should be resolved in petitioner's favor, in light of the lengthy sentences that he is serving. The Court thus issues petitioner a COA. Petitioner is also granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous. A court may grant *in forma pauperis* status if the court finds that an appeal is being taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Robinson is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court issues petitioner a certificate of

appealability and leave to proceed on appeal *in forma pauperis*.


                                          __s/Arthur J. Tarnow_____

**Dated: June 6, 2019**           **HON. ARTHUR J. TARNOW**
                                       UNITED STATES DISTRICT COURT